UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 6:24-CR-13-CHB-HAI |
| v. ) | |
| ) | RECOMMENDED DISPOSITION |
| DAVID W. MORRIS, ) | |
| ) | |
| Defendant. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

On referral from District Judge Boom (D.E. 3), the Court considers reported violations of supervised release conditions by Defendant David W. Morris.

**I.**

District Judge Charles R. Simpson III of the Western District of Kentucky entered Judgment against Defendant in November 2011 on Defendant's plea to transportation and receipt of child pornography. Defendant was sentenced to 151 months of imprisonment, followed by lifetime supervised release. *See* D.E. 1-3. Defendant was first released on September 11, 2020.

On November 17, 2020, Defendant's release was revoked after he was found guilty of the following violations: two counts of unlawful use of a controlled substance, two counts of unlawful possession of a controlled substance, failure to abide by the rules of the Computer Restriction & Monitoring Program, failure to provide information regarding his computer system, and two counts of viewing pornography depicting sexually explicit conduct. He was sentenced to four months of imprisonment, with a lifetime term of supervised release to follow.

Defendant was released again on March 5, 2021. As a special condition of release, he was required to participate in a residential reentry center program at Dismas Manchester, in Clay

County, Kentucky; therefore, his supervision was provided by the Eastern District of Kentucky. Earlier this year, jurisdiction over the case was transferred to this District and assigned to Judge Boom.

## II.

On March 1, 2024, the United States Probation Office ("USPO") issued the Supervised Release Violation Report ("the Report") that initiated these proceedings. The Report charges six violations. The Report includes the following narrative:

> On February 5, 2024, Morris notified this officer his romantic relationship had ended, and he would need to vacate the residence within two weeks. He reported having lost his job due to repeated absences but felt confident he could obtain new employment quickly and find a new home placement. Approximately one week later, Morris advised he had not been successful in his search for new employment or housing. This officer then made arrangements to have him placed at the Catalina Motel in Lexington, Kentucky, for a period of time, with the goal of placing him back into Dismas Manchester until he could secure housing and employment on his own.
>
> On February 22, 2024, Morris reported to the probation office to sign the necessary paperwork to place him into temporary housing. Morris does have a vehicle for transportation, however, lacked the funds to buy gasoline. The probation office purchased gasoline to ensure he could get to the destination in Lexington, Kentucky. Morris was also provided with hygiene items and food until other resources could be obtained. This officer instructed Morris to contact this officer upon arrival at the Catalina Motel. Additionally, he was instructed to report to the local state probation office to update his sex offender registration and to notify this officer upon completion. This officer provided Morris with printed directions to the motel, as well as written details for reporting to the state probation office.
>
> On February 23, 2024, this officer traveled to the Catalina Motel and spoke with the proprietor and learned Morris had never arrived at the motel as directed.
>
> Four days later, on February 27, 2024, Morris contacted this officer via text message advising he did drive to Lexington, Kentucky, as instructed but immediately came back to the London, Kentucky, area to take care of some things. This officer instructed him to report to the probation office, which he did.

2

>	Once Morris arrived at the probation office, he was informed a room was no longer available at the Catalina Motel. Further, Morris submitted to a drug test via instant testing device, which revealed positive results for marijuana, methamphetamine, and MDMA (Ecstasy). Morris signed an admission form stating he had used methamphetamine and marijuana on February 26th. He denied knowingly consuming MDMA. The sample has been sent to the laboratory for further analysis.
>
>	This officer discussed with Morris his current situation of homelessness. Morris advised he would attempt to stay with an acquaintance for a few days. The probation office, once again, provided food and drinks for Morris until other resources could be determined.

Violation #1 concerns Standard Condition #5, which states:

>	You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.

The Report alleges Defendant failed to report to his temporary housing arrangement on February 22 and his whereabouts were then unknown for several days. This is a Grade C violation.

Violation #2 alleges a Grade-C violation of the condition that requires Defendant to obey the probation officer's instructions related to supervision. The Report explains:

>	On February 22, 2024, this officer instructed Morris to report to the Catalina Motel in Lexington, Kentucky. He was instructed to contact this officer by phone the following day after he checked into the motel and report to the local state probation office to update his Sex Offender Registry information. Morris failed to report to the Catalina Motel and has not updated the Sex Offender Registry.

Violation #3 alleges a Grade-C violation of the condition that requires he "comply with any sex offender registration laws of any state in which he/she resides, is employed, carries on a vocation, or is a student."

3

Violation #4 alleges Defendant violated the condition prohibiting unlawful possession and use of a controlled substance. Based on Defendant's admission to using meth and marijuana (and the positive test result for meth, marijuana, and MDMA), this is also a Grade C violation.

Based on this methamphetamine use, Violation #5 charges a violation of the condition prohibiting commission of another federal, state, or local crime. Citing the Sixth Circuit's decision that use is equivalent to possession, Violation #5 is a Grade B violation because simple possession of methamphetamine violates K.R.S. § 218A.1415(1)(c), a Class D Felony.

Based on Defendant's marijuana use, Violation #6 charges another violation of the condition prohibiting commission of another federal, state, or local crime. Citing the Sixth Circuit's decision that use is equivalent to possession, Violation #6 is a Grade C violation because simple possession of marijuana violates 21 U.S.C. § 844(a), which provides a penalty of not more than one year a (Class A misdemeanor).

On March 26, 2024, the USPO issued an Addendum to the Report. According to the Addendum,

> On March 3, 2024, a laboratory report was completed confirming the presence of marijuana in the urine sample collected from Morris on February 27, 2024.
> On March 7, 2024, a laboratory report was completed confirming the presence of methamphetamine in the urine sample collected from Morris on February 27, 2024. This sample returned negative results for the presence of MDMA.
>
> Morris previously signed an admission form on February 27, 2024, admitting to the use of marijuana and methamphetamine.

On March 8, 2024, Magistrate Judge Atkins conducted an initial appearance on the Report pursuant to Rule 32.1. D.E. 7. The Court set a final hearing following a knowing, voluntary, and intelligent waiver of the right to a preliminary hearing. At the initial appearance,

the United States made an oral motion for interim detention; Defendant did not argue for release. *Id.* Based on the heavy defense burden under 18 U.S.C. § 3143(a), the Court remanded Defendant to the custody of the United States Marshal. *Id.*

At the final hearing on March 26, 2024, Defendant was afforded all rights due under Rule 32.1 and 18 U.S.C. § 3583. D.E. 9. The Court reviewed the Addendum with the parties. Defendant competently entered a knowing, voluntary, and intelligent stipulation to all six alleged violations. *Id.* For purposes of Rule 32.1 proceedings, Defendant admitted the factual basis for each of the six violations as described in the Report and Addendum. The United States thus established violations #1-6 under the standard of section 3583(e).

Both parties agreed that revocation was warranted and that Defendant should continue on lifetime supervision. The parties argued for different prison sentences. The Court announced it would also make findings under *United States v. Inman*, 666 F.3d 1001 (6th Cir. 2012), which requires close examination of the imposition of a lifetime term of supervised release and accompanying special conditions. The Court told the parties they could lodge any appropriate objections thereto following the filing of this Recommended Disposition.

### III.

The Court has evaluated the entire record, the Report, Addendum, and accompanying documents, and the sentencing materials from the underlying Judgment. Additionally, the Court has considered all the section 3553 factors imported into the section 3583(e) analysis.

Under section 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction. Defendant pleaded guilty to two Class-C felonies, transporting child pornography and receiving child pornography. 18

5

U.S.C. §§ 2252A(a)(1) & 2252A(a)(2)(A).  Such a conviction carries a 24-month maximum period of incarceration upon revocation pursuant to 18 U.S.C. § 3583(e)(3).

The Policy Statements in Chapter 7 of the Sentencing Guidelines provide advisory imprisonment ranges for revocation premised on criminal history (at the time of original sentencing) and the "grade" of the violation proven.  *See United States v. Perez-Arellano*, 212 F. App'x 436, 438-39 (6th Cir. 2007).  Under section 7B1.1, Defendant's admitted conduct would qualify as a Grade C violation with respect to Violations #1-4 and #6 and a Grade B violation for Violation #5.  Given Defendant's criminal history category of I (the category at the time of the conviction in this District) and Grade B violation,[1] Defendant's range, under the Revocation Table of Chapter Seven, is four to ten months.  USSG § 7B1.4(a).

A court may re-impose supervised release, following revocation, for a maximum period that usually subtracts any term of incarceration imposed due to the violation.  *See* 18 U.S.C. § 3583(b) & (h).  Defendant's conviction carries no maximum term of supervised release. See 18 U.S.C. § 3583(k).

### IV.

At the final hearing, the government requested a top-of-the-Guidelines penalty of ten months' imprisonment, with the first six months of lifetime supervision spent in a halfway house. The defense requested a bottom-Guidelines penalty of four months.  The defense agreed that lifetime supervision was appropriate, with the first six months being a transition period at Dismas House.   The undersigned recommends eight months' incarceration, with lifetime supervision commencing with six months at a halfway house.

---

[1] *See* USSG § 7B1.2(b) ("Where there is more than one violation of the conditions of supervision, or the violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade.").

6

The government began by noting the seriousness of the underlying child exploitation offense. Society has a strong interest in having a "clear handle" on the location of child sex offenders. Yet Defendant made this impossible by making himself difficult to locate. The probation officer "bent over backward" to provide housing for Defendant during his period of homelessness, but he did not take advantage of these efforts. This is his second revocation. And last time, his sentence was at the bottom of his Guidelines Range. Given these factors, the government explained it would seek a penalty in the top portion of the Range, even without the drug-related violations.

However, on top of the violations concerning maintaining his address and obeying the probation officer, Defendant also indulged in meth and marijuana. This behavior is troubling because these drugs can reduce the quality of Defendant's judgment and decision-making. Although the violations themselves do not have a tether to the underlying conduct, impairing his judgment could lead to further similar crimes. The government also noted that Defendant reported no drug use on his PSR. But the prior revocation also involved unlawful controlled substance use.

On the positive side, the government noted that Defendant clearly admitted the six violations. He also admitted his drug use when confronted with the instant test results. And, per the Addendum, Defendant was accurate when he stated he had used marijuana and methamphetamine, but not MDMA. Further, the USPO reports that Defendant was one session away from completing his sex-offender treatment program.

The defense emphasized that Defendant had done well on supervision for almost three years after his release on the prior revocation. He unfortunately fell into a spiral of unlawful behavior following the dissolution of a relationship. He was moving around in an attempt to

save a two-year relationship. And then an old acquaintance offered him drugs. A single relationship incident spawned a string of several violations, and his resulting drug use generated three more. While Defendant's violation behavior was unrelated to the underlying charges, the defense saw no reason to remove lifetime supervision. Defendant will also be on the sex offender registry for life.

Defendant declined to address the Court.

## V.

To determine an appropriate revocation term of imprisonment, the Court has considered all the statutory factors imported into the § 3583(e) analysis, as well as the Guidelines Range. Congress mandates revocation in a case of this nature. By statute, the Court must revoke Defendant because he possessed a controlled substance. *See* 18 U.S.C. § 3583(g)(1); *see also United States v. Crace*, 207 F.3d 833, 836 (6th Cir. 2000) (equating use with possession). Subsection 3583(g)(1) calls for revocation when the defendant is found to have possessed a controlled substance in violation of the mandatory condition that the defendant not unlawfully possess a controlled substance. Subsection 3583(d) provides an alternative to revocation and imprisonment when a drug treatment program is appropriate. *See Crace*, 207 F.3d at 835. Neither side argued for drug treatment as an alternative to revocation.

The presence of a Grade B violation also means that revocation is recommended under the Guidelines. U.S.S.G. § 7B1.3(a)(1) ("Upon a finding of a Grade A or B violation, the court shall revoke probation or supervised release."). Even if revocation were not mandatory, revocation would be appropriate in this case due to the nature of the violations.

Regarding the circumstances of the offense of conviction, receipt and transportation of child pornography can cause great harm to the victims. *See United States v. Johnson*, 640 F.3d

8

195, 203 (6th Cir. 2011) (explaining that the "circumstances of the offense" described in 18 U.S.C. § 3553a)(1) refers to "the original offense of conviction"). Such pictures, especially if unleashed on the web, can effectively become immortal. Fortunately, Defendant did not repeat any of these behaviors in the violation conduct.

The Court next considers Defendant's history and characteristics. This includes his prior revocation, his three-year period of successful supervision, and his admission to drug use and ultimately all six violations. Because of his potential for harm, Defendant is facing lifetime sex offender registry and, most likely, lifetime federal supervision.

Another consideration is the need for additional training and treatment. Here, Defendant was one class away from finishing sex offender treatment. The Court will leave it to the discretion of the USPO as to whether such treatment should resume. The parties otherwise did not address any need for treatment.

Two other factors, the need to protect the public and the need to deter criminal conduct, do weigh heavily in this case. Society has an interest in tracking Defendant's whereabouts. And the USPO needs his cooperation to effectuate the goals of supervision. Defendant thwarted these needs. He further used illegal drugs, thereby committing crimes while on release. A serious penalty is needed to provide deterrence. And continued supervision will serve the public-protection need.

The most important factor in this case is the breach of the Court's trust. The Guidelines suggest that the ***primary*** wrong in the supervised release context is the violation of the Court's trust by an offender. The particular conduct is an important but secondary issue. *See* Guidelines 7 Pt. A(3)(b) ("[A]t revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation

and the criminal history of the violator."). The Court must impose a sentence that is sufficient, but not greater than necessary, to address Defendant's breach of trust and the other statutory goals imported into section 3583(e). Drug use while on supervision is a serious breach of the Court's trust. And making supervision (and registry monitoring) impossible is more serious still. And this is a second revocation, which means a ratcheting up of the penalty is appropriate.

One factor the Court must consider is the need to avoid unwarranted sentencing disparities. This factor is usually addressed, as here, by imposing a within-Guidelines sentence. The recommended eight-months sentence is double what Defendant received last time. But he gets credit for the strides he made while on supervision and for his acceptance of responsibility.

The Court recommends reimposition of lifetime supervision. As both sides requested, this supervised release should commence with six months at a halfway house. The purpose is to allow Defendant to obtain stable housing. The undersigned also recommends that Defendant's supervision status be reviewed after ten years.

Lifetime supervision is authorized by 18 U.S.C. § 3583(k) and is consistent with the policy statement at Guideline 5D1.2(b). In light of the Sixth Circuit's decision in *United States v. Inman*, 666 F.3d 1001 (6th Cir. 2012), the Court will examine each individual special condition. Instead of the conditions that were previously imposed, the Court will recommend imposition of the Special Conditions adopted in this District for sex offenders following *Inman*. The conditions are as follows:

### VI. Special Conditions of Supervision

#### A. Substance Abuse Treatment & Drug Testing Conditions

1. You must participate in a substance abuse treatment program at the discretion of the probation officer as to whether such is necessary. You must follow the rules and regulations of that program. You will attend when required and

    participate during sessions. You will contribute to the cost of services, based upon the agreed cost directive, previously approved by the Court and in place with the probation office. The probation office will supervise your participation in the program (provider, location, modality, duration, intensity, etc.).

2. You must participate in urinalysis testing, or any other form of substance abuse testing, as directed by the probation officer. You must refrain from obstructing or attempting to obstruct or tamper, in any fashion, with the efficiency and accuracy of any prohibited substance testing which is required as a condition of your release. You must not knowingly use or consume any substance that interferes with the accuracy of substance abuse testing.

Here, Defendant has been twice revoked for illegal drug use and possession. These conditions are designed to assist him with staying clean and sober while on supervised release.

### B. Search Condition

    You must submit your person, property, house, residence, vehicle, papers, computers (as defined in 18 U.S.C. § 1030(e)(1)), other electronic communications or data storage devices or media, or office, to a search conducted by a United States probation officer. Failure to submit to a search may be grounds for revocation of release. You must warn any other occupants that the premises may be subject to searches pursuant to this condition. An officer may conduct a search pursuant to this condition only when reasonable suspicion exists that you have violated a condition of your supervision and that the areas to be searched contain evidence of this violation. Any search must be conducted at a reasonable time and in a reasonable manner.

This search condition is supplemented by the special sex-offender condition #9 below. Section 3583(d) authorizes a special search condition in sex-offender cases.[2] This condition is designed to prevent possession of pornographic materials in both electronic and physical form. Because

---

[2]     This section state, in part:

    The court may order, as an explicit condition of supervised release for a person who is a felon and required to register under the Sex Offender Registration and Notification Act, that the person submit his person, and any property, house, residence, vehicle, papers, computer, other electronic communications or data storage devices or media, and effects to search at any time, with or without a warrant, by any law enforcement or probation officer with reasonable suspicion concerning a violation of a condition of supervised release or unlawful conduct by the person, and by any probation officer in the lawful discharge of the officer's supervision functions.

18 U.S.C.A. § 3583(d).

11

Defendant carries the special risks associated with sex offenders, the USPO needs authority to conduct searches and monitor his compliance with the law.

### C. Sex Offender Conditions

1. You must participate in a program for treatment of mental health/sexual disorders; must undergo a sex offender risk assessment, psychosexual evaluation and / or other evaluation as needed; must be subject to periodic polygraph examinations, Computer Voice Stress Analysis (CVSA) testing and/or other psychological and physiological testing, at the discretion and direction of the probation officer; and, must follow the rules and regulations of the sex offender treatment program as implemented by the probation office.

2. Your residence and employment must be pre-approved by the probation officer and in compliance with state and local law.

3. You must not frequent, volunteer, or work at places where children under the age of 18 congregate (e.g. playgrounds, parks, day-care centers, public swimming pools, youth centers, video arcade facilities) unless approved by the probation officer, and must have no contact with victims.

4. You must not associate or have verbal, written, telephonic, or electronic communication with any person under the age of 18 without the permission of the probation officer. This provision does not encompass persons under the age of 18 such as ticket vendors, cashiers, waiters, etc., with whom you must deal in order to obtain ordinary and usual commercial services.

5. You must not view or possess any "visual depiction" (as defined in 18 U.S.C. §2256) including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of "sexually explicit conduct" (as defined in 18 U.S.C. § 2256) or that would compromise your treatment. You must not enter into any location where such materials, sexually stimulating performances, or sexually oriented material, items or services are available.

6. You must not possess any materials depicting and/or describing "child pornography" and/or "simulated child pornography" as defined in 18 U.S.C. § 2256, or that would compromise your sex offender treatment. You must not enter any location where such materials can be accessed, obtained or viewed, including pictures, photographs, books, writings, drawings, videos or video games.

7. You must comply with the requirements of the Sex Offender Registration and Notification Act (42 U.S.C. § 16901, et seq.) as directed by the probation

    officer, the Bureau of Prisons, or any state sex offender registration agency in which you reside, work, are a student, or were convicted of a qualifying offense.

8. You must not possess or use a computer (as defined in 18 U.S.C. § 1030(e)(1)) or any electronic device with access to any on-line computer service at any location (including place of employment) without the prior written approval of the probation officer. This includes any Internet Service provider, bulletin board system, or any other public or private network or e-mail system.

9. You must consent to the U.S. Probation Office conducting unannounced examinations of any and all electronic devices (*i.e.*, computer system(s), internal/external storage devices, hand-held devices, etc.), which may include retrieval and copying of all memory from hardware/software and/or removal of such system(s) for the purpose of conducting a more thorough inspection and will consent to having installed on your computer(s) or electronic devices any hardware/software to monitor device use or prevent access to particular materials, and to consent to periodic inspection of any such installed hardware/software to insure it is functioning properly.

10. You must provide the U.S. Probation Office with accurate information about your entire computer system (hardware/software) and all electronic devices; all account user names; all passwords used by you; and, will abide by all rules of the Electronic Device Restriction and Monitoring Program.

11. Ten years after the date of Judgment, the Court will conduct a hearing to review Defendant's status and reevaluate Defendant's conditions of supervised release.

In light of *Inman*, these special sex-offender conditions are appropriate for the reasons summarized below:

    Special Condition #1, concerning treatment, is necessary in light of Defendant's history of sexual crimes. His violation behavior also shows he is capable of risky conduct, which includes dulling his mind with meth and marijuana and failure to cooperate with Probation. But the treatment and evaluations described herein are to be imposed at the UPSO's discretion and are in no way mandatory. The Court notes again that Defendant was one class away from completing sex-offender treatment at the time of the violations.

Special Condition #2, concerning pre-approval of Defendant's residence and employment, is needed to help Defendant comply with state sex offender laws.

Special Conditions #3 and #4, concerning contact with minors, are justified based on Defendant's prior receipt and transport (which includes possession) of child pornography. Following *Inman*, these conditions were rewritten to allow contact with minors upon approval of the probation officer.

Special Conditions #5 and #6 are crafted to eliminate Defendant's access to pornography. In light of his history, the USPO must be involved in the selection and configuration of Defendant's electronic devices. They need to know what devices and access he has, and what he can do with them. This condition is not a blanket prohibition. Instead, it allows for possession of such items after sufficient safeguards and monitoring strategies are in place, and is not more restrictive than necessary.

Special Condition #7, requiring Defendant to register as a sex offender as prescribed by state law, is specifically contemplated in 18 U.S.C. § 3583(d).

Special Conditions #8 and #10 regulate Defendant's access to electronic devices and permit inspection by the USPO. These conditions have been updated to address changes in technology. These devices are becoming increasingly difficult to monitor, as prior sex-offender cases in this Court have demonstrated. These conditions will enable the USPO to have knowledge of, and access to, any electronic devices and related hardware and software. These conditions will help deter further criminal and violation conduct and protect the public from the risks associated with pornography use by Defendant. The condition as written allows the use of electronic devices with prior written permission of the probation officer.

Special Condition #9, concerning searches, is authorized by § 3583(d). Because Defendant carries the special risks associated with sex offenders, the USPO needs authority to conduct searches and monitor his compliance with the law.

Special Condition #11, concerning a reevaluation of these conditions after ten years, is recommended because the Court cannot predict the extent of supervision necessary at that time and what technological changes may occur in the future. A reevaluation will enable the Court to adjust Defendant's conditions to address any of his emerging needs, any advances in technology, and any changes in the law that may occur. This review does not limit the USPO's ability to seek a modification of the conditions of release prior to the ten-year review.

## VII.

Based on the foregoing, the Court **RECOMMENDS**:

1. That, upon his stipulation, Defendant be found guilty of Violations #1-6.

2. Revocation with a term of imprisonment of eight months.

3. Reimposition of lifetime supervision, except that Defendant's Special Conditions should be replaced by the new, post-*Inman* conditions as described in Section V, including a review after ten years of Defendant's progress and his conditions.

4. Addition of a condition that, upon release, Defendant shall reside for six months at Dismas in Manchester, Kentucky.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). Within **fourteen days** after being served with a copy of this Recommended Disposition, any party may serve and file written objections to any or all portions for consideration, *de novo*, by the District Judge. Failure to make timely objection consistent with the statute and rule may, and

normally will, result in waiver of further appeal to or review by the District Judge and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Wandahsega*, 924 F.3d 868, 878 (6th Cir. 2019).

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. Any waiver should comport with the Court's standard waiver form, available from the Clerk. Absent waiver, the matter will be placed on Judge Boom's docket upon submission. If Defendant chooses to waive allocation, he **SHALL** do so on or before the deadline for filing objections.

This the 28th day of March, 2024.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge